(40 Misc. Rep. 22.)

### BAUMEISTER v. DEMUTH.

(Supreme Court, Special Term, New York County. February, 1903.)

1 SPECIFIC PERFORMANCE—PURCHASE OF LAND—TENDER OF DEED—MARKETABLE TITLE.

Plaintiff sued for specific performance of a contract to buy land purchased by him at foreclosure of a mortgage which he had held thereon. The purchaser rejected title on the ground that the mother of an infant defendant had petitioned for a guardian ad litem on the foreclosure, and not the infant; that the venue of the guardian's affidavit was Westchester county, but that it was verified in New York before the petitioner's attorney; that the guardian did not state he had no interest adverse to the infant. After the expiration of the contract, the vendor attempted to cure these defects by an ex parte order amending the proceed-

ings for the appointment of the guardian ad litem, and two days later tendered a deed. *Held*, that the purchaser was justified in rejecting it.

Action by Theodore Baumeister against Frank Demuth for specific performance of a contract for the purchase of realty. Judgment for defendant.

Plaintiff derives his title from the foreclosure by himself of a mortgage covering the property. The defendant refused to accept the deed for reasons stated in the opinion. No adjournment was taken of the contract. On July 9, 1902, plaintiff, unknown to the defendant or his counsel, but on notice to the attorneys for the parties who had appeared in the foreclosure action through which he had so derived his title to the premises, and on some of the parties themselves therein, procured an order of this court amending nunc pro tunc the proceedings for the appointment of the guardian ad litem by changing the venue in the affidavit to the county of New York, and amending the petition by making the same recite, as of the date of the former provision, that the infant was under the age of 14 years, with the same force and effect as if it had originally so recited, and directing that the affidavits annexed to the notice of motion be filed and attached, together with the order itself, with the judgment roll, with the same force and effect as if they had been attached at the time of the appointment, and confirming the appointment of the guardian ad litem, and directing that "the act and proceedings of said guardian ad litem be, and the same hereby are, ratified and confirmed in all respects." Thereafter plaintiff tendered defendant a deed, who referred him to his attorney. Plaintiff walked downstairs, swore to the complaint before a notary public, who was a clerk in his office, and the notary went immediately back and served the summons and complaint upon the defendant.

Theodore Baumeister and Samson Lachman, for plaintiff.
Edward P. Orrell and Edward W. S. Johnston, for defendant.

MacLEAN, J. Title was to be passed between the parties at the plaintiff's office July 1, 1902, at noon. There and then they met. The defendant tendered the balance of the consideration—execution of a purchase-money mortgage to be drawn by the plaintiff and $2,400 in money. The plaintiff tendered a deed, to which it was objected that in the foreclosure through which came his title (1) the appointment of a guardian ad litem had been upon the petition of the mother, who deposed that her child was of the age of 14 years, and the court might not appoint a guardian upon such petition; (2) that the venue of the affidavit of the guardian was laid in Westchester county while it purported to have been verified before a commissioner of deeds for the city of New York; (3) that it was not stated in his affidavit that the guardian had no interest adverse to the infant; and (4) that the petitions for the appointment of the guardian ad litem for both infants defendant were verified before a notary public, who was the executor of the deceased parent of the infants, and also the attorney of one of the petitioners. Another objection—that certain liens of judgments had not been cut off—will not be considered here. As was his right, the defendant refused to take the deed, which was all the plaintiff tendered or had to tender. There was no adjournment, postponement, or extension of the time for performance. Both stood upon their rights. When they parted, each could consider his relation to the other as pronounced and determined. Under date of the same day the plaintiff wrote the lawyer, who had advised the defendant as to the title and its defects, asking whether

he would accept the title with the deed of the executor of the deceased holder of the fee. He replied he thought the defects would be obviated only by strict foreclosure, which would not take long, and that, if desired, he would advise his client, the defendant, to await that, adding that he would be pleased to confer with the plaintiff and aid him. This civil offer of co-operation should have been availed of. No response was given it. On July 11th two persons repaired to the front of the defendant's place of business in Upper Broadway. One, a clerk, went in, tendered the defendant the papers again, and demanded that he pay the money, execute the mortgage, and receive the deed, to which the defendant replied that such matters would have to be referred to his attorney. The clerk walked downstairs to the plaintiff in waiting, swore him to his complaint, already prepared, and, turning about, served a copy of it with a summons. So the action was on, and rudely. It is for specific performance of the purchase. In answer the defendant sets up the facts named as defects and counterclaims for his expenses about examining the title. In the days between the noon hour set for passing the title and the beginning of this action, the plaintiff at Special Term obtained without intimation to the defendant, but upon affidavits and notices to some of the parties, and notice, after their power to bind had lapsed, to the attorneys of other parties in the foreclosure action, which he had conducted himself, an order amending nunc pro tunc as of November 30, 1898, the proceeding for the appointment of a guardian ad litem by changing the venue of the affidavit to the county of New York, amending the petition by making the same recite as of November 30, 1898, that the infant was under the age of 14 years, with the same force and effect as if it had originally so recited, and directing that the affidavits annexed to the notice of motion, viz., of the petitioning mother respecting the age of the infant child, of the guardian ad litem asserting at length his qualifications for guardianship, including his lack of interest adversely to the infant, and of the present plaintiff characterizing the omissions and inconveniencing statements as clerical errors, be filed and attached, together with the order itself, with the judgment roll, with the same force and effect as if they had been attached at the time of the appointment. Besides all that, the appointment of the guardian ad litem was also confirmed, and it was further ordered that "the act and proceedings of said guardian ad litem be, and the same hereby are, ratified and confirmed in all respects."

Even were this order efficacious and competent for all the plaintiff would have it, to sustain his contention would seem too much like making an agreement for the parties, or rather to constrain the defendant to accept a situation tardily created and harshly presented, and impose upon him and his successors a title inviting cavil, only to be obviated by concessions of benefit, usually reductions of price. After what had happened, the demand that the defendant perform in a trice was not merely unreasonable; it was unwarranted altogether. By their course and conduct the parties had made the very time they had theretofore set an essentially fixed fact. As they separated without offer, promise, or request, with no suggestion of meeting

again, without intimation that the plaintiff could or would try to cure the defects, and resting on their several rights as they stood, the intending purchaser could not complain if the seller sold to another, nor could the seller complain if the buyer used his money elsewhere, or not at all. The objections made were serious. The affidavit of the would-be guardian ad litem, shown upon its face to have been taken outside of the jurisdiction of the certifying commissioner, was a nullity. Thompson v. Burhans, 61 N. Y. 63. The statement as of fact; the action taken by the court thereon contrary to the law; the absence of the required statement in the affidavit, such as it was, of the person offering himself as guardian—these, taken together, colored, too, by the verification of the petition before the petitioner's attorney, are more than criticisable, and enable the minor, upon coming of age, when rise in value may increase the temptation, to seek to avoid the decree by an existing, but not now exercisable, right, of which the court may not improvidently deprive him. Infants being adjudged in law incompetent to manage their own affairs or conduct their own litigation with suitable prudence and discretion, the statutes, and rules of practice having the force of statutes, providing for appearance in their behalf, are deemed to have a substantial object in view, and are to be observed accordingly. Nonobservance of them may be waived by infants upon coming of age if they so elect, but they may not be compelled to abide the result if they elect not to be bound. Either and all of these faults were correctible before the entry of the judgment. They were not, according to learned authority, to be disregarded under any statute of jeofail, nor may they be overlooked under the Code of Civil Procedure, according to any case referred to in the briefs. To cure them by an order nunc pro tunc, especially after the lapse of more than three years from the entry of the judgment, even with an appendix of ratification and confirmation by judicial legislation resembling a remedial statute, goes beyond any specimen or precedent cited to the court. The plaintiff might have relieved himself and his title from their predicament by more ways than one had he sought such relief rightly, instead of resorting to a misleading byway. The order entered is beyond the purview of a nunc pro tunc entry, whose office is to supply omission in the record of action really had, but omitted through inadvertence or mistake. Its procurement was an imposition upon the court, to which the paper should not have been submitted for judicial sanction upon the assumption, in the part devoted to litigated motions, that papers presented by reputable counsel upon seemingly due notice, without opposition offered, have common approval, and are proper to be entered by the court. This order thus procured has not so medicined as to cure the infirmities of the proceedings, which, to be valid and bind the infant, must set forth the facts conferring jurisdiction with proof of conformity to the statute. The petition and affidavits needful thereto are the individual acts of the petitioners and affiants, which the court may not mend any more than it may change an undertaking. As yet no proper petition has been made part of, or even filed with, the judgment roll. To characterize as flimsy the objections which he has been so troubled

to meet helps the plaintiff's claim little. Nor is his apprehension to be shared that, if his opponent's "contentions are to be sustained, there is scarcely a title in the city which cannot be assailed successfully, and conveyancing would come to a standstill." Better things are known and expected from the skill and diligence of the learned lawyers, busied with the transfer of real property, and whose deserved reputation gives the presumption of reliability of titles, even under the cumbersome system of recording still obtaining, which reputation and presumption will be strengthened, and not lessened, by sustaining the rejection of titles barnacled with blunders of procedure. Judgment for the defendant, with costs.

Judgment for defendant, with costs.